Before we begin the arguments this morning, I would like to make a motion and for that reason I will turn over the presiding judge's gavel to my colleague, Judge Prost. Well, I'm happy to turn it back to you and you recognize you, Judge Lind, for your motion. Very good. Now, I have the distinct pleasure this morning of moving the admission of one of my law clerks and I will begin with the formal motion. I move the admission of Alexander Pergamon, who is a member of the Bar and Good Standing of the Highest Court of New York. I have knowledge of his credentials and am satisfied he possesses the necessary qualifications and I certainly am aware of his qualifications. Mr. Pergamon served not only as my law clerk but as an intern while he was in law school and he's doing a superb job. Happy to make this motion. I say yes. In light of that, I too say yes and I grant the motion. Very good. If you will address the clerk of the court and take the oath. Raise your right hand and I swear or affirm that you will comport yourself as an attorney and counsel of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. Congratulations. Welcome to the Bar of the United States Court of Appeals. Welcome. All right. We begin with the first argued case is Appeal Number 2010-1148, In re Sharp. Mr. Egbert. Good morning. Yes, Your Honor. May it please the court, my name is John Egbert and my associate, Kevin Wilson, and I represent Michael Sharp in this appeal relative to the determination of genericness by the trademark office with respect to the mark phone casting. Therefore, the whole issue before the court that we're discussing is, is the term phone casting generic or is it merely descriptive? And that's along that continuum between fanciful trademarks, suggestive trademarks, descriptive marks, and generic marks. So, it's an analysis, where does this mark exactly fit? If this court should determine ultimately that the mark is merely descriptive, then we would be entitled to register the mark on the supplemental register and eventually with proper proof, move it to the principal register for full trademark protection. If you should determine that it's generic, then of course it is unregisterable and that's the end of five years of proceedings in this case. Mr. Egbert, your burden here is to show that there isn't substantial evidence to support the board's conclusion on this, on the genericness matter. Don't you have a problem with the fact that the mark in question is used in a generic sense directly by your client, used in the patent application and elsewhere? Oh, I respectfully disagree with that analysis, Your Honor. It's used in clearly a descriptive sense in the patent application. In a generic sense, it would be saying phone casting without a description associated with it. There would be the name phone casting only passing. You know, we offer text messaging, voicemail phone casting, and broadcasts. And it would appear in a sentence there. We have an entire patent application explaining what in the world phone casting is. And that's why it's not generic. It needs a description before you as a member of the public has any understanding whatsoever of what phone casting is. Once again, if it's generic, you know what it is without having to look at a patent application. Did you put on any evidence in the record? Did we put on any? To establish that it's not generic, to rebut the conclusions or the, you know, the evidence put on by the other side. We did not specifically put in any evidence. We are relying upon the evidence presented by the trademark office to show that it's not generic. And in that regard... And what's the burden on the directors to show genericness by clear evidence? Is that the test? It's clear evidence. Not clear and convincing, just clear? Uh, I believe this court has interpreted clear evidence as clear and convincing before. But we can stay with clear, clear evidence. And it has to be a substantial showing. And our basic position is that if you look at the evidence provided by the trademark office, it proves our case for us. It proves descriptiveness. It proves mere descriptiveness. It does not prove genericness. First, look at the patent application that talks about phone casting. Even in the brief written for the trademark office, I quote, applicant himself used the term phone casting descriptively in his patent application. They didn't say generically. They said descriptively. That's clear. If you look at the other references, phone casting appears, but not in a generic sense. It's always phone casting is a service that does this, this, this, this, and this. It doesn't say phone casting, say in a list of words, where people would recognize it as just a generic term of some sort of internet or cell phone service. Now, can't that happen after a while? Let's assume, let's assume that a term is descriptive. And the term is used over and over and over and over and over again to describe that particular characteristic. Doesn't at some stage in the game, the term become generic? At a certain stage in the game. Oh, we look at the term Xerox. Can I just say, let's pick something that is just used. I mean, the word car, automobile, was used to describe something that has some wheels on it and propelled along the road and probably carried something, right? The first person that said, my God, what is that going down the street? And I said, that's an automobile. They were describing it, right? I like the term escalator, which really was a moving staircase. Probably the first time anybody said escalator, it was describing the thing. A name for it, right? It was the Escalator Moving Staircase Company. Right. But then, if I'm right, at some stage in the game, escalator, enough people say, well, that's an escalator. And all of a sudden, it's a generic thing that just is out there and can't be trademarked. That's correct. So why isn't that what's happened with you? If you look at the various number of references in the record, why are people talking about phone casting in the same terms that you're talking about it as descriptive? Well, if we're looking at, quote, substantial, end quote, evidence as provided by the trademark. But the notion of the generic is that enough people understand what it means that no one person can own it anymore, right? That's correct. That's correct. Now, if you look at the 11 references, six are actually talking about our phone casting service. Maybe a customer, such as a store, saying they sell Coca-Cola. There are five other references that talk about a phone casting product that is being released by another company. We don't know whether that is in any way in relation to our product. I was looking at the one at page 88 in the record, which is Fusion, whatever Fusion is. It says, phone casting. Phone casting transformed mobile and home phones into a delightful new medium that people can get information yada, yada. That seemed to be what you were describing, phone casting. And that is our client's product that's being described in there. It's a name, phone casting, along with a definition. And you need the name and a definition. It's presented in a proper trademark sense rather than a generic sense because I am introducing Coca-Cola to the market. Here is Coca-Cola, and you would naturally say a sweet caffeinated beverage. Here we have phone casting. It is a service that does X, Y, and Z. So rather than a generic use of the mark, it's actually a very, very proper trademark use of the mark. Normally a trademark use is where a mark is used as an identifier, as an adjective to modify the generic name, the Apple computer or Honda automobile. And turning back to your patent application, your client's patent application, page 184 of the appendix, at the bottom of that page there are some definitions. It says the term phone cast, when used herein as a noun, refers to so-and-so, so-and-so. And then when used herein as a verb, use so-and-so. In both cases, seemingly a definition of the generic term. It doesn't say this is an adjective that modifies the generic good or the generic service as follows. Isn't that a problem? It's not a problem at all, Your Honor. This is a really cloudy area. Properly trademarked. What's so cloudy about this is a definition of the word in a generic sense, directly, either as a noun or as a verb. Well, then the parallel conclusion would be when I say, I'm going to go buy a Coca-Cola. I'm using Coca-Cola as a noun rather than as an adjective. Yeah. Well, I'm sure the Coca-Cola people have trouble with that all the time. I mean, that was the dilemma with the escalator. That was the dilemma with Kleenex, which was a trademark. That became Kleenex tissue, and all of a sudden it became a Kleenex. Well, but in your client's case, the loss of rights based on generic use is right at the outset because you're defining it at the very beginning in the patent application. And because there is a definition, it's descriptive, not generic. I would say with Kleenex, with escalator, there were a wide variety of references in the literature far greater than 11 references or six references. So you're saying that if this evidence shows anything, it simply shows descriptiveness, not generic. That is my argument. It hasn't risen to the level. You're saying it hasn't had enough volume. Because the way I was seeing this case, trying to see it through your eyes, your client's eyes, as well as the director's eyes, I think the director was looking at this as if, unfortunately, you filed your request for a trademark too late because you genericized your own trademark by your patent application, by your clients, your customers, who are now, the world now knows what phone casting is. So I guess what you're saying is that could happen, but it hasn't happened yet. You haven't popularized the description of these services adequately yet to achieve genericism. As you can imagine, probably this learned panel has no idea what my client's services are based upon the name phone casting. Also, in this day of internet communication. We know what telecasting is, and we know what podcasting is. And in this day and age with all of this electronic thing hovering around us, if somebody comes up with a new term telecasting or phone casting, it has to be something dealing with transmission of electronic information and all this sexy stuff happening, doesn't it? And if it were generic, you would already know that without having to suppose that. Because the test is whether the public understands what the services are based upon that. Well, what stage in the game can someone genericize their own descriptive term? I mean, you were referring to the escalators and Kleenex. It gets to be 10 years. How many forms of use in the public does there have to be before the director can say this term has morphed from being a descriptive term to a generic term? I'm quite confident there's no real numerical standard, nor should there be. Is that what substantial evidence is all about? That's why it's required to be substantial evidence or clear evidence. And that's not what has been presented so far in the refusal. Well, mixing the notion of substantial evidence with a clear and convincing test is a little confusing. I would agree. Because ordinarily you're not proving clear and convincing evidence by a substantial test. Would you like to reserve the balance of your time? I will reserve the balance of my time. All right, very good. Let's hear from the government. Mr. Shaw. May it please the court? This is a straightforward case. The only issue is whether there is clear and substantial evidence to show that the mark is generic or whether it's… Clear and substantial? What's the difference between clear evidence and substantial evidence? Well, the standard of review, obviously, for this court is substantial evidence. And the cases that have come down from this court, Merrill Lynch and others, talk about clear evidence. So I think the answer is this court looks to see whether there's substantial evidence. And then when you get into it, the evidence has to be clear that the term is generic. Is it clear and convincing? Is it like an invalidity test? No, I think it's clear evidence, Your Honor. That's what the Merrill Lynch case says. So I think it's just clear evidence. When you look at it… Clear evidence, me? Well, if you go back and you look at the Merrill Lynch case again, in that case there was quite a bit of evidence. Some of it showed that the term cash management account, which was at issue in that case, was generic. But some of it also showed that the public recognized that that was also a product of, I think it was the Merrill Lynch company. So in that case you had evidence that seemed to sort of go both ways. You had a mixed record, in essence. You had evidence that showed genericness, but you also had evidence that showed that the public regarded that as a proprietary term or a trademark. And I think in a case like that, the court found that there wasn't clear evidence. That's not the case here. Here, all the evidence that the office has before it shows that the term really is generic. How is that? Well, if the office… Many, many of the iterations simply, they say, phone casting is, so they describe what it is. Well, and I think if you look at the evidence piece by piece, Your Honor, you'll see that they all do that. They all sort of explain what phone casting is. They explain that it's this new service. And we're not arguing that the applicant doesn't also provide phone casting services. Clearly they do. But we're arguing that they're not entitled to be the only phone caster out there because the evidence shows that there are any number of other people that provide phone casting services, and they need to be able to use this term. Other people non-affiliated with them? That's correct, Your Honor. What's an example of that in their record? If you go to the first wiki article on page 68, Your Honor, there is a list of phone casting services, and then it provides the names of eight to ten different companies. As of 2006, we're providing phone casting services, blog, talk radio. What makes an entry on Wikipedia clear evidence? Well, Wikipedia is essentially an online encyclopedia or an online dictionary. It's self-policing in some ways. People are able to upload changes to it. And this evidence was before the board, and the applicant had the opportunity to rebut the finding or the evidence when it was before the board, but didn't do so. But even without rebuttal, why is it anything other than sort of the understanding of whoever it is that contributed that definition to Wikipedia? Well, to a certain extent it is, but it also drives public perception. And the test for genericness is how does the relevant public view the term to refer to the particular genus of services. And when you look at all the evidence, including the Wikipedia evidence, the answer is when the public sees this term phone casting, they're going to essentially perceive that it refers to this particular genus of services. Is there any burden on the office to find out how many hits that site may have had? What if nobody ever looked for that definition of Wikipedia? Well, the evidence is out there, and the office, we don't really have the resources to delve into every press release or find out the success of competitors, for example. We can only go on what is available to the public and to potential consumers of the particular product. If you look at this piece of evidence in the Wikipedia that you cited to us at A68, how do we know that ODO, GABFAST, et cetera, when it says these are people doing phone casting, that they're all doing the same thing? How do we know that the description of the services for which Sharpe's trying to get his mark is these are the same services? How do we know that? Well, I think if you look at the wiki evidence on the preceding page… I'm just looking from this. I mean, I'm just trying to take each piece of evidence. I mean, the presiding judge has asked questions about how reliable is the evidence at all that comes from Wikipedia. How do we know that ODO, for example, for phone casting, isn't doing something entirely different than what Sharpe describes his services to be? Well, if you look at the definition… You don't know, right? What's that? You don't know. We don't particularly know. ODO could be a service for maybe finding somebody to walk your dog. Well, it could be, but it's a bit like going to the phone book and looking up automobile dealers. If you see a number of different dealers in that phone book, you're going to assume that they are, in fact, providing automobile dealership services. I mean, it could be a type of… But we don't know what phone casting… What does phone casting mean? How would I know what phone casting means from looking at page A68? Well, if you look at the complete excerpt, Your Honor, on the preceding page, it defines it on the preceding page, which on any computer, it all runs together into one big long page. But it says, Phone casting is a portmanteau of television and podcasting and means creating podcasts by dialing into a service with a phone, leaving a message, and having the service create a podcast out of the audio. And then, so it explains what it is. Indeed, the term seems to have dual meanings, right? Well, I think if you look at what podcasting is, Your Honor, if you look at what all the evidence shows, is that podcasting is sort of a service that allows people to call a number, create a message if they want to share whatever their particular message is with the world, and then they can take that message, and the phone cast service provider will convert that into an audio file, essentially. Do we know as a matter of law that podcasting is generic? Well, yes, Your Honor. How do we know that? Has that been established in some case? No, not as a matter of law, Your Honor. But if you look at the evidence, the four kinds of evidence that we put forth in the record, the patent application, the online reference works, the third-party competitors, the news stories, and even the applicant's own website, if you look at all those things, those are competent evidence to show what the public perception is of these terms. And if you go back and look at some of the precedents of this court, for example, the Gould case, the ScreenWipe case, where you had dictionary definitions and a little bit of applicant's use, that was enough to find ScreenWipe's generic. Here you've got extensive use by third parties. You've got their own patent application defining it as a noun or a verb. And one other thing that I'd like to point out is that four of the websites actually show use of the term phonecasting before the applicant's own use. So this wasn't even a case of them using it as a mark and then losing it to genericness. Four of the websites actually predate their first use. So at least four other people were using this as a descriptive or generic term before they even came on the scene. And that's the Viking website, the Podcast Free America. Those are all 2004, 2005 uses. So they actually predate the applicant. So this isn't even a case like Kleenex or Escalator or something else where you've had a mark and then it became generic. This was a mark that was clearly on scene already, and they adopted it, and it was already generic by the time they adopted it. Unless there are any other questions, I'll waive the remainder of my time. There was no – correct me if I think I'm right. The SHARP isn't mounting any procedural error argument here. As I recall, the process by which this trademark application found its way through the office was rather tortuous. Yes, you're right. It was a bit convoluted. But there is no – there's no challenge. Okay. Thank you, Your Honor. Thank you very much. Mr. Egbert. I think I have a bit of an answer to our earlier discussion about what constitutes substantial evidence and what constitutes clear evidence. Quite clearly, substantial evidence means more or less the volume of references relied upon by the trademark office. In this case, there were 11 references to prove genericness. The clear evidence refers to the quality of those amongst the 11 references that were cited. In this case, what do we have? We have a Wikipedia entry. We have, of course, Coca-Cola has a Wikipedia entry too. That doesn't prove that it's a generic mark. I mean, you can't control what goes into a Wikipedia entry. We have four uses by other companies prior to our use of the mark phone casting. We don't know if those companies are in existence, how they used it, how much they used it. Are you sure that, I mean, you're keying off of what the presiding judge suggested about Wikipedia, that somehow that evidence is tainted. But why can't enough people making the same mistake convey genericness onto something that's descriptive? I think you're absolutely correct. Enough people making a mistake can turn a mark generic, absolutely. So if that's really true, then the fact that we can be somewhat suspicious of what shows up on Wikipedia, because even Clevenger could, I can write something into Wikipedia in that awful thought. So that goes to the point of maybe it's not necessarily true, but if enough people are falling for it, that's correct. Generic characteristic comes. And basically in conclusion, in this age of wireless communication, if this mark were really generic, you would see it everywhere. And in fact, it's extremely rare where anyone comes up with the term phone casting. It's extremely rare that it appears anywhere in the literature. And on that basis, I would conclude that it's impossible to find this mark generic. It's merely descriptive. And on that basis, we would ask this court to overturn the decision of the Trademark Trial and Appeal Board and allow this mark to register on the supplemental register. Thank you. Thank you, Mr. Egbert. Thank you, Mr. Shaw. The case is submitted. Next appeal.